(No. 33114.— ▬▬▬▬▬▬)

LA SALLE NATIONAL BANK *et al.,* Appellees, *vs.* THE CITY OF CHICAGO.—(FRIEDA MARKELS *et al.,* Appellants.)

*Opinion filed May 24, 1954—Rehearing denied September 20, 1954.*

TANNENBAUM & POLIKOFF, of Chicago, for appellants.

MAURICE J. NATHANSON, and COHON & GOLDSTEIN, both of Chicago, for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

A judgment of the circuit court of Cook County declared invalid the frontage consent provisions of sections 136-6 and 136.1-6 of the Municipal Code of Chicago to the extent that they purported to restrict the rights of the plaintiffs to obtain a license to conduct a nursing home in the building located at 5517 North Kenmore Avenue, in Chicago. After this judgment was entered and while the case was pending upon appeal, the controverted license was issued, and as the matter now stands in this court the principal question is whether the case is moot.

The plaintiffs are the La Salle National Bank, as trustee, which holds title to the property in question, and Ken-

more, Inc., a corporation authorized to operate a nursing home. The complaint alleged that Kenmore, Inc., had entered into a contract for the purchase of the property, and proposed to convert the existing building into a nursing home. The property is located in an apartment house district under the Chicago zoning ordinance, and under that ordinance a nursing home is a permitted use in such a district. But section 136.1-6 of the Municipal Code of Chicago provides that no license shall be issued to conduct a nursing home in any block in which two-thirds of the buildings fronting on both sides of the street on which the proposed home will face are devoted exclusively to residence purposes, unless written consents of the owners of a majority of the frontage on both sides of the street in the block in question are filed. Section 136-6, which is substantially the same, provides that no new frontage consents shall be required if the home has theretofore been licensed at the same location.

After describing the densely populated area in which the property is located, plaintiffs alleged that the uses of the surrounding property are so diversified and the area so intensely developed with large apartment buildings, hotels, rooming houses, and businesses, that to require consents to enable them to maintain a convalescent home is unreasonable, and that the frontage consent provisions are void as applied to their property and the purpose for which it was proposed to be used, because they violate plaintiffs' rights under sections 2 and 13 of article II of our constitution, "and the 5th [*sic*] and 14th amendments to the Constitution of the United States."

The complaint sought a declaration that the frontage consent provisions were invalid or inapplicable to the plaintiffs' property, an injunction restraining the defendant, the city of Chicago, from interfering with the proposed use of the property, and a writ of *mandamus* to compel the issuance of a permit.

In its answer, the city took the position that the plaintiffs could not use the property for the purpose desired until they complied with all applicable provisions of the Municipal Code, including the ordinances requiring frontage consents, and that the frontage consent requirement is both necessary and reasonable.

Frieda Markels and Verna L. Polikoff, and certain others, who alleged that they were owners of property in the block in question, were permitted to intervene. Their answers contained detailed allegations as to the uses to which the buildings in the block in question are put, and alleged the validity of the frontage consent provisions.

Considerable evidence was heard and a judgment order was entered holding that the proposed use of the property by plaintiffs was a permitted use under the Chicago zoning ordinance, and that the frontage consent provisions were invalid because they deprived plaintiffs of their property without due process of law. The trial judge has certified that the validity of a municipal ordinance is involved and that, in his opinion, the public interest requires a direct appeal. The sole defendant, the city of Chicago, did not appeal. This appeal was prosecuted by two of the intervenors, Frieda Markels and Verna L. Polikoff.

Plaintiffs have moved to dismiss the appeal on the ground that the case is now moot. A supporting affidavit states that on February 9, 1954, after the entry of the judgment below, the city of Chicago issued its license to Kenmore, Inc., to operate a nursing home at the location in question. A photostatic copy of the license is attached to the motion. The intervenors have filed countersuggestions to the motion to dismiss, arguing that the case has not become moot, and that even if it has, the appeal should not be dismissed.

A case is moot when it does not involve any actual controversy. (*Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508.) Where the issues involved in the

trial court no longer exist, an appellate court will not review a case merely to decide moot or abstract questions, to establish a precedent, or to determine the right to, or the liability for, costs, or, in effect, to render a judgment to guide potential future litigation. (*Siefferman* v. *Johnson*, 406 Ill. 392; *Central States Import and Export Corp.* v. *Illinois Liquor Control Com.* 405 Ill. 58; *Railway Express Agency, Inc.* v. *Commerce Com.* 374 Ill. 151; *Chaitlen* v. *Kaspar American State Bank*, 372 Ill. 83; *People ex rel. Lawrence* v. *Village of Oak Park*, 356 Ill. 154; *People ex rel. Chancellor* v. *Sweitzer*, 329 Ill. 380; *Wick* v. *Chicago Telephone Co.* 277 Ill. 338.) Since the existence of a real controversy is an essential requisite to appellate jurisdiction, the general rule is that where a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, it will dismiss the appeal or writ of error even though such facts do not appear in the record. (*Siefferman* v. *Johnson*, 406 Ill. 392; *Tuttle* v. *Gunderson*, 341 Ill. 36; *Chaitlen* v. *Kaspar American State Bank*, 372 Ill. 83; *Kimball* v. *Kimball*, 174 U.S. 158.) From the necessity of the situation courts allow facts which affect their right and duty to proceed in the exercise of their appellate jurisdiction, but which do not appear in the record before it, to be proved by extrinsic evidence. (*Kimball* v. *Kimball*, 174 U.S. 158; *Mills* v. *Green*, 159 U.S. 651; *Dakota County* v. *Glidden*, 113 U.S. 222; *Tuttle* v. *Gunderson*, 341 Ill. 36.) Such a fact may be presented, as here, by motion supported by affidavit. *Ebert* v. *Beedy*, 113 Ill. 316. See: *Chaitlen* v. *Kaspar American State Bank*, 372 Ill. 83.

In the leading case of *Mills* v. *Green*, 159 U.S. 651, the court said: "The duty of this court * * * is to decide actual controversies, by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in

the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."

In this case, the primary relief sought by plaintiffs was the issuance of a license. The basic issue made by the pleadings and determined by the judgment of the trial court was the validity of the frontage consent requirements. The license has now been issued, and by obtaining the license, plaintiffs necessarily have admitted the validity of the ordinances under which it was issued. The controversy which was considered and decided by the trial court thus no longer exists. This case obviously lacks that extraordinary degree of public concern and interest which prompted our retention of jurisdiction in *People ex rel. Wallace* v. *Labrenz,* 411 Ill. 618, 132 A.L.R. 1186.

Intervenors rely upon *Hoyt* v. *McLaughlin,* 250 Ill. 442, arguing that the issuance of the license has not made a decision useless, because, "if the ordinances are declared valid, the license may be void." In the *Hoyt case,* the complaint sought an injunction against the operation of a dramshop. It alleged that the petition filed with the application for the dramshop license did not contain the number of signers required by ordinance, and that the license was therefore invalid, so that the dramshop was being operated illegally. A demurrer to the complaint was sustained. Upon appeal, this court held that a license issued without compliance with an ordinance requiring the signatures of a specified proportion of the adjacent property owners is invalid and void, and that the complaint therefore stated a cause of action against defendants for running a dramshop without a license. In the *Hoyt case,* however, the question of the validity of the dramshop license

was presented in the first instance. In this case, no question of the validity of the license issued to Kenmore, Inc., to operate the nursing home was presented or could have been presented at any time during the progress of the case. That the validity of the license may be challenged as in the *Hoyt case,* or by some other procedure (cf. *Theurer* v. *People ex rel. Deneen,* 211 Ill. 296; *People* v. *Griesbach,* 211 Ill. 35; *Swarth* v. *People ex rel. Paxton,* 109 Ill. 621,) does not alter the fact that no such issue was presented or decided in this case.

Intervenors also contend that the appeal should not be dismissed even though the case is moot, because they would then remain bound by the adjudication of invalidity of the ordinances and by the declaration of the circuit court that they are entitled to no rights, without an opportunity for a review of those determinations. With this contention we agree. In most of the cases where the issues have become moot, the appeals were dismissed. The practice has not, however, been uniform; judgments and decrees have been affirmed; (*People* v. *Sweitzer,* 329 Ill. 380; *Wick* v. *Chicago Telephone Co.* 277 Ill. 338; *Wendell* v. *City of Peoria,* 274 Ill. 613;) judgments and decrees have been reversed, (*People* v. *Redlich,* 402 Ill. 270;) and there have been reversals and remandments. *Ebert* v. *Beedy,* 113 Ill. 316.

*Brownlow* v. *Schwartz,* 261 U.S. 216, presented a situation like that before us. Schwartz sought a writ of *mandamus* to compel the issuance of a building permit. His petition was dismissed. Upon appeal, the judgment was reversed and the cause remanded with directions to issue the writ. Thereafter, the United States Supreme Court allowed a writ of error to the Court of Appeals for the District of Columbia. After the decision of the Court of Appeals, but before allowance of the writ of error, the permit was issued and the building was constructed. It had been completed when the writ of error was allowed. The Supreme Court said: "It thus appears that there is

now no actual controversy between the parties—no issue on the merits which this Court can properly decide. * * * This Court will not proceed to a determination when its judgment would be wholly ineffectual for want of a subject matter on which it could operate. An affirmance would ostensibly require something to be done which had already taken place. A reversal would ostensibly avoid an event which had already passed beyond recall. One would be as vain as the other. To adjudicate a cause which no longer exists is a proceeding which this Court uniformly has declined to entertain. [Citations.] * * * The case being moot, further proceedings upon the merits can neither be had here nor in the court of first instance. To dismiss the writ of error would leave the judgment of the Court of Appeals requiring the issuance of the mandamus in force— at least apparently so—notwithstanding the basis therefor has disappeared. Our action must, therefore, dispose of the case, not merely of the appellate proceeding which brought it here. The practice now established by this Court, under similar conditions and circumstances, is to reverse the judgment below and remand the case with directions to dismiss the bill, complaint or petition. [Citations.]" Cf.: *United States* v. *Munsingwear, Inc.* 340 U.S. 36; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 16.

In our opinion, appropriate disposition of this case requires that the judgment of the circuit court, which cannot be reviewed because intervening events have made the case moot, be set aside. Such a disposition makes it clear that the matter will not be *res judicata,* since there is no judgment on the merits. The judgment order of the circuit court of Cook County is therefore reversed and the cause remanded, with directions to dismiss the complaint.

*Reversed and remanded, with directions.*