THE COUNTY OF WILL, Plaintiff, *v.* ARCOLE MIDWEST CORPORATION, Defendant-Appellee.—(THE PEOPLE OF THE STATE OF ILLINOIS, Intervening Plaintiff; RICHARD J. STRUNC *et al.*, Intervening Plaintiffs-Appellants.)

Third District   No. 76-308

Opinion filed February 10, 1977.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellants.

Sidney Karasik, of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This appeal stems from an action brought by the County of Will for an injunction prohibiting the maintenance of an asphalt plant on land not zoned for the same. Judgment was rendered in favor of the defendant upon the pleadings. The intervening plaintiffs, being the appellants in this appeal, are landowners who are concerned about the devaluation of their property located near the asphalt plant if the same is permitted to continue operating.

Arcole Midwest Corporation, the defendant, is engaged in highway construction. Having been awarded two[1] contracts for highway construction in Du Page County the defendant, pursuant to the provisions of section 1 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1975, ch. 34, par. 3151), applied to Will County for the temporary use of a 5.4-acre tract of land for a temporary permit to use this acreage as a site for the installation, maintenance and operation of its facilities, to-wit, a "black top" plant so it could fulfill its Du Page County highway construction contracts. On January 23, 1974, the County of Will issued the defendant a permit to install on the site a temporary asphalt plant for the purpose of road building and repairs. Both the application filed and the permit issued stated that the temporary use permit was to expire when the Du Page County work was completed.

The site of the plant was and is still zoned as a I-3 District, an industrial use district which does not permit asphalt plant operations.

---

[1] The defendant's permit was predicated upon the fact that it received two highway construction contracts; however, both of these contracts pertained to work on two different segments of the same highway and the defendant's work on each segment was to be joined or to meet each other when the contract provisions had been fulfilled. In the light of such facts the two contracts entered into by the plaintiff can and should be considered as one contract, since they related to work to be performed on one job site.

The Du Page County work was completed by the defendant in August, 1975, and on September 5, 1975, the County of Will directed the defendant to discontinue its operation and to remove its plant from the site; however, also on September 5, 1975, the defendant was awarded two additional road construction contracts for jobs in Du Page, Cook, and Will Counties. The defendant then filed a second application for temporary use of the site where its facilities were already located in order to do the work necessary to fulfill these contracts. This second application for a permit was denied by Will County, however, the defendant refused to discontinue its operation, remove its equipment and as of the present time is continuing to use the site originally granted to it on a temporary basis by the first permit issued by the County of Will.

On September 25, 1975, the plaintiff, Will County, filed a complaint to enjoin the defendant's continued use of the site for its asphalt operations. After a hearing on the complaint and answer, and without trial, the Circuit Court of Will County on March 26, 1976, denied the issuance of the injunction. On April 14, 1976, certain parties hereinafter referred to as intervening plaintiffs filed this appeal.

The paramount issued presented in this appeal is whether a highway construction contractor can maintain what are to be temporary facilities used in the ordinary course of construction activities on land not zoned for the same through a period measured by the duration of successive construction contracts.

In determining this issue we direct our attention to certain portions of our statutory law relating to the authority of counties in regard to zoning regulations. We specifically deem the following provisions to be pertinent:

> "* * * the board of supervisors * * * of each county, shall have the power to regulate and restrict the location and use of buildings, structures and land for trade, industry, residence and other uses which may be specified by such board, * * *.
>
> The powers by this Act given shall not be exercised so as to * * * prohibit the temporary use of land for the installation, maintenance and operation of facilities used by contractors in the ordinary course of construction activities, except * * * that the period of such temporary use shall not exceed the duration of the construction contract; * * *." Ill. Rev. Stat. 1975, ch. 34, par. 3151.

Before construing the above cited statutory provisions it should be noted that the defendant in its brief raises several additional issues, to-wit, the constitutionality of the Will County Zoning Ordinance, which in fact was not raised in this appeal, and the further issue that the trial court's findings are not against the manifest weight of the evidence. This latter issue we deem improper inasmuch as there was no trial, no testimony, exhibits or affidavits were received by the trial court so as the result of

there being no evidence at the trial court level the "manifest evidence" question cannot be an issue in this appeal. As we previously stated the sole issue in this appeal is the one raised by the intervening plaintiffs and relates to the construction of section 1 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1975, ch. 34, par. 3151).

In construing a statute our Supreme Court has stated:

> "We are thus directed by case law in the State of Illinois to apply to words appearing in legislative enactments their common dictionary meaning or commonly accepted use unless otherwise defined by the legislature, the specific meaning being determined by the object sought to be accomplished by the statute in which they are used." *Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 201, 120 N.E.2d 15.

Following this guideline we deem the word "temporary" which appears in the statute in question to be the key word as far as construction of the statute is concerned. The dictionary meaning of the word "temporary" implies an arrangement established with no thought of continuance but with the idea of it being changed soon. From the dictionary we find that the word "temporary" is synonymous with the word "transient" which described that which is in the process of passing by, and which will therefore last or stay only a short time. (See the Random House Unabridged Dictionary of the English Language 1462 (1966).) In 41 Words and Phrases 399 (1965), we find "temporary" means lasting for a time only, existing or continuing for a limited time, not of long duration. See also *Moore v. Smead* (1895), 89 Wisc. 588, 62 N.W. 426.

The word temporary in the statute to be construed in light of its definition would be meaningless if a party such as the defendant in the instant case could enter into a series of successive maintenance or construction contracts and upon mere showing that a new contract was in esse an additional permit to use land not zoned for the location of construction or maintenance facilities would be issued as a matter of right. Should this be a possibility or the result derived from the statute (Ill. Rev. Stat. 1975, ch. 34, par. 3151), then the legislature certainly made a futile gesture when it inserted the word "temporary." In the instant case the defendant has located its plant on land not zoned for asphalt operations since January 23, 1974, to the present date, or for a period of approximately three years. The work to be done pursuant to defendant's first contract was completed in August 1975, yet defendant continues its operation because of an award of two additional construction contracts for jobs in Du Page, Cook and Will Counties. *A fortiori*, at the completion of the defendant's present contracts will others be awarded and the asphalt operations continue at the present site? Plaintiffs argue that as the result of the trial court's ruling the defendant could remain in operation where it is presently located ad infinitum. We do not agree with such an

extreme prediction; however, we are of the opinion that by virtue of the trial court's ruling the word "temporary" in the statute has become meaningless and the legislative intent has been thwarted.

■■■ We deem that portion of the statute which states, "* * * The powers by the Act given shall not be exercised so as to * * * prohibit the temporary use of land for the installation, maintenance and operation of facilities used by contractors in the ordinary course of construction activities * * *" (Ill. Rev. Stat. 1975, ch. 34, par. 3151) to be an exception specifically granted by the legislature so as to aid and assist certain contractors to perform their work at a location conveniently near the job site. It is a well-settled rule of statutory construction, that exceptions or provisos found in a statute are to be strictly construed. (See *People v. Chas. Levy Circulating Co.* (1959), 17 Ill. 2d 168, 161 N.E.2d 112.) Rather than a strict construction the defendant is asking for and in fact has received a liberal construction of the statutes. Again we disagree with the trial court in its construction of the statute and accordingly reverse the judgment of the Circuit Court of Will County and remand this case with directions to grant the injunctive relief prayed for in the complaint.

Reversed and remanded.

STENGEL, P. J., and ALLOY, J., concur.

